UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Matthew Rosario (R-71339), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 23-cv-2726 |
| v. ) | |
| ) | Hon. April M. Perry |
| Sydney Williams and Antonio Fleming, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Matthew Rosario, an Illinois prisoner, brings this Section 1983 action against two officers at Stateville Correctional Center claiming that they failed to protect him from a fight with another inmate. Defendants now seek summary judgment. For the reasons that follow, Defendants' motion is granted, and judgment is entered in Defendants' favor.

### I.  BACKGROUND

#### A.  Local Rule 56.1 of the Northern District of Illinois

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. Here, Defendants filed a compliant Rule 56.1 statement of facts and supporting exhibits, and as required by Local Rule 56.2 served Plaintiff with a notice to unrepresented litigants opposing summary judgment. Doc. 57, 58.

Plaintiff has attempted to comply with Local Rule 56.1. He responded to Defendants' submissions by filing a response to Defendants' statement of facts, a statement of additional material facts, several exhibits, a sworn declaration, and an argument as well as a list of what

Plaintiff believes to be the key disputed factual issues. Doc. 61, 62, 64, 66. Defendants responded to Plaintiff's submissions. Doc. 71, 72.

Plaintiff's responses and factual assertions do not always fully comply with Local Rules 56.1(d) and (e), in that they in places do not consist of clearly numbered paragraphs and do not cite to the record for alleged factual assertions. Where Plaintiff has not properly responded to one of Defendants' stated facts or has admitted it, the Court will accept that fact as true if it is supported by evidence in the record. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). But although the Court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011), it will also consider the facts identified by Plaintiff, including in his declaration, to the extent that those facts are supported by the record or Plaintiff has the personal knowledge to testify to them. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (courts may construe *pro se* submissions leniently). That said, the Court will not look beyond the portions of the record that have been cited by the parties. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("[D]istrict courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").

Plaintiff's failure to comply strictly with Local Rule 56.1 is not a basis for automatically granting Defendants' motion for summary judgment. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). The Court is mindful that Defendants have the "ultimate burden of persuasion" to show that they are entitled to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

**B.**   **Material Facts**

2

With the foregoing standards in mind, the following facts are taken as true (unless noted otherwise) for deciding Defendants' motion. Plaintiff Matthew Rosario is an Illinois Department of Corrections prisoner who during the relevant time was incarcerated at Stateville Correctional Center ("Stateville"). Doc. 57 ¶ 1; Doc. 64 at 1. Defendant Sydney Williams ("Williams") was a Lieutenant at Stateville. Doc. 57 ¶ 2; Doc. 64 at 1. Defendant Antonio Fleming ("Fleming") was a correctional officer at Stateville. Doc. 57 ¶ 3; Doc. 64 at 1.

On June 5, 2021, Plaintiff had an altercation with another Stateville inmate named Hardin. Doc. 57 ¶ 5; Doc. 64 at 1. Plaintiff and Hardin then both spent twenty-eight days in segregation, after which Plaintiff was returned to his cell in Edward House. Doc. 62 at 1-2; Doc. 64 at 1-2. Plaintiff testified that Warden Osborn, who was in charge of the Restrictive Housing Committee, told Plaintiff that he would be transferred out of Stateville if he again fought with Hardin. *Id.* Plaintiff believes that Hardin was housed in Bravo House. Doc. 57 ¶ 19.

A "Keep Separate Form" ("KSF") was placed in Plaintiff's file the first week in June 2021 for Plaintiff and Hardin. *Id.* ¶ 6; Doc. 57-2; Doc. 64 at 2. The effective date listed on the form is June 7, 2021. Doc. 57-2. Plaintiff did not request the KSF, but he testified that he learned about its existence a few days after his release from segregation during a conversation with a counselor. Doc. 62 at 5. Plaintiff did not see Hardin again until July 12, 2021 – the date of the incident in this case. Doc. 57 ¶ 8.

Prior to July 12, Plaintiff did not personally know Defendant Williams or Defendant Fleming. Doc. 57 ¶¶ 9-10. His only interactions with the Defendants prior to that date was to say things like, "hi" or "what's up" as they passed each other. *Id.* Both Defendants testified that they were unaware of the KSF for Plaintiff and Hardin on July 12. Doc. 57 ¶¶ 26-27, 31-32.

3

On July 12, 2021, Williams was assigned to Stateville's commissary, filling in for another lieutenant who was off that day. Doc. 57 ¶¶ 26, 30. That morning, Plaintiff's gallery, Edward House Gallery 5, was called for commissary. Doc. 57 ¶¶ 11-12; Doc. 62 at 2. It was broadcasted over the radio that Edward House was going to commissary. Doc. 62 at 6-7. As Plaintiff was leaving the Edward House building, Plaintiff testified that he saw Williams at the bottom of the stairs. Doc. 57 ¶ 13; Doc. 62 at 6. Plaintiff testified that Williams told him, "I heard about the fight with Hardin." *Id.* Plaintiff testified that he responded, "yeah," and kept walking to the commissary building. Doc. 62 at 6.

At commissary, Plaintiff and his gallery were placed in bullpens in the building to wait for their turn to be called. Doc. 57 ¶ 15; Doc. 62 at 7. After about twenty minutes, Plaintiff asked Fleming if he could use the restroom, and Fleming opened the bullpen door to let Plaintiff out. Doc. 57 ¶ 16; Doc. 62 at 7. At that time, Williams was sitting at a desk by the bullpen door talking to Fleming and another officer. Doc. 57 ¶ 17. Plaintiff testified that he heard Williams say to the other officers, "I hope he knows how to fight." *Id.*; Doc. 62 at 7. Plaintiff testified that he heard the other officers laugh. Doc. 62 at 7. Williams testified, however, that she never made this statement, and that she did not hear any other officer make this statement. Doc. 57 ¶ 29. Fleming also testified that he did not hear Williams or any other officer make this statement. Doc. 57 ¶ 34.

Plaintiff testified that he did not hear any of the officers' conversation that preceded this comment. Doc. 57 ¶ 18. He testified that, "I don't know if she's talking to me, or making a joke, or whatever it is." *Id*. ¶ 17. Plaintiff wondered whether Williams was talking to him given her earlier statement by the stairs, but he did not say anything to Williams in response. *Id.*

Plaintiff then exited the bullpen and walked with his head down towards the bathroom.

4

Doc. 62 at 3. He noticed a person's feet and looked up and saw that it was Hardin. *Id.* Plaintiff asked Hardin, "what's going on?", and then Hardin launched at Plaintiff. Doc. 57 ¶ 20. A fight ensued. *Id.* Plaintiff does not believe that Bravo house was called to commissary at the same time as Edward House because only one house attends commissary at a time. Doc. 57 ¶ 19; Doc. 62 at 7.

Williams gave two orders for the inmates to stop fighting, and when they did not comply, she sprayed them with OC spray. Doc. 57 ¶ 30; Doc. 62 at 7. Plaintiff and Hardin were eventually restrained and escorted to the Health Care Unit where they received medical attention. *Id.* The corresponding medical report states that Plaintiff had "no visible injuries," Doc. 57 ¶ 37, but Plaintiff testified that he later developed a black eye, Doc. 62 at 3. Plaintiff testified that he shortly thereafter told Warden Osborn that Hardin should not have been at commissary at the same time as him, and that, according to Plaintiff, Warden Osborn agreed and released him early from segregation. Doc. 62 at 3.

In September 2021, Plaintiff filed a grievance about the July 12, 2021 incident which does not note any statements made by Williams to Plaintiff prior to the fight with Hardin. Doc. 57 ¶ 38; Doc. 57-9. The grievance did request that Plaintiff's disciplinary report be expunged. *Id.* This request was denied because Plaintiff had pleaded guilty to the charge in the disciplinary report. Doc. 57 ¶ 39.

II. **STANDARD OF REVIEW**

On summary judgment, the Court must view the record in the light most favorable to the nonmoving party and grant the motion if the movant "show[s] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gupta v. Melloh*,

19 F.4th 990, 997 (7th Cir. 2021); Fed. R. Civ. P. 56(a). Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial burden of demonstrating an absence of any genuine issue of material fact. *Id.* at 323. If that burden is met, the burden "shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A factual dispute is genuine when a reasonable jury could return a verdict in favor of the nonmoving party. *Id.* Although courts must draw all inferences in favor of the nonmoving party, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "the nonmoving party must set forth specific facts showing a genuine issue for trial." *Abrego v. Wilkie*, 907 F.3d 1004, 1011–12 (7th Cir. 2018) (citing *Matsushita*, 475 U.S. at 587).

### III. DISCUSSION

Upon § 1915A screening, Plaintiff was allowed to proceed on a claim of failure to protect from the second fight with Hardin. Doc. 6. This claim arises under the Eighth Amendment, which requires that prison officials "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). But "a prison official does not violate the Eighth Amendment every time an inmate gets attacked by another inmate." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). "Prisons, after all, are dangerous places often full of people who have demonstrated aggression." *Id.* at 569. Rather, to establish a claim that officials violated his Eighth

6

Amendment rights by failing to protect him, Plaintiff must produce evidence showing that he faced a substantial risk of harm and that officials acted with deliberate indifference to that risk. *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). A risk is "substantial" when it is "almost certain to materialize if nothing is done." *Id.* at 911. "[T]he risk must be somehow specific to a [inmate], and not a mere general risk of violence." *Thomas v. Dart*, 39 F.4th 835, 842-43 (7th Cir. 2022) (cleaned up). A prison official demonstrates deliberate indifference to such a risk when he or she "knows of and disregards" the risk; the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008).

Defendants' motion focuses on deliberate indifference. They contend that they did not possess knowledge of a serious risk to Plaintiff, and therefore that they could not have been deliberately indifferent. The Court agrees.

First, the mere existence of a KSF – absent Defendants' knowledge thereof – does not support an Eighth Amendment deliberate indifference claim. Placing two inmates together who have a KSF can create a substantial risk of harm. *See Miller v. Fisher*, 219 F. App'x 529, 532 (7th Cir. 2007) (describing a keep-separate order as "itself a statement of the risk" of potential violence). But if the placing officer is unaware of the KSF, then he or she is not "subjectively aware" of the risk it represents, and therefore not constitutionally liable. *See id.*; *Miller v. Mascillino*, No. 15-cv-11746, 2023 WL 6276526, at *12 (N.D. Ill. Sept. 26, 2023) (knowledge or lack thereof of KSF was the deciding issue at summary judgment); *see also generally Goka v.*

7

*Bobbitt*, 862 F.2d 646, 651 (7th Cir. 1988) ("When prison officials are unaware of the risk involved and violate a policy which may have prevented injury to an inmate, courts have generally found no constitutional violation.").

In this case, Plaintiff has not come forward with evidence to create a disputed issue of fact as to Defendants' knowledge of the KSF. Defendants' testimony that they were not aware of the KSF is undisputed. Plaintiff testified that he did not tell either of the Defendants about the KSF. Doc. 57-1 at 28. And Plaintiff did not introduce any evidence showing that Defendants were informed of the KSF through other means. Indeed, Plaintiff's main argument is that Defendants should have checked whether a KSF existed before allowing both Plaintiff and Hardin in the commissary building. Doc. 62, pg. 8-9, 10-11. This suggests, at most, negligence, which is not enough to support an Eighth Amendment claim. In other words, Plaintiff's assertion that Williams failed to learn that a KSF existed and thus allegedly did not separate Plaintiff from Hardin is inconsistent with the type of intentional conduct that is necessary to establish a constitutional violation. *See Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018) (explaining that conduct that was "at worst negligence, not recklessness" was insufficient for liability); *see also Conner v. Hoem*, 768 F. App'x. 560, 564 (7th Cir. 2019) (constitution does not require state actors to enforce their own policies and regulations). The existence of a KSF of which Defendants were unaware is simply not a basis for their liability.

This leaves only Defendant Williams' statements to Plaintiff that she had heard about the first Hardin fight and her statement to the other officers before Plaintiff went to the bathroom that she "hopes he can fight" to support a showing of deliberate indifference. Williams denies making both of these statements, Fleming denies hearing the latter, and Plaintiff made no mention of either

8

in his contemporaneously-filed grievance. That said, at summary judgment, the Court must credit Plaintiff's testimony about Williams' statements.

But even when drawing all reasonable, non-speculative, inferences in Plaintiff's favor from those statements, there is not evidence to demonstrate that Defendants had knowledge of a serious risk that "was almost certain to materialize if nothing is done." *Brown*, 398 F.3d at 911. Williams' statement on the staircase was that she knew Plaintiff and Hardin had fought, but the Seventh Circuit has made clear that mere knowledge of a past fight is not enough to impute knowledge of a present threat. *See Klebanowski,* 540 F.3d at 639-40 (defendants' knowledge that the plaintiff "had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life," did not give the defendants actual knowledge of a "specific threat" to the plaintiff's safety because "[h]e did not tell them that he had actually been threatened with future violence"). A prisoner's reported fear must be specific enough, or there must be other corroborating evidence, demonstrating that the fear is plausible and there exists a real, imminent threat of harm. *Zirko v. Rabideau*, No. 21-1389, 2022 WL 16955470, at *2 (7th Cir. Nov. 16, 2022) (citing *Gevas v. McLaughlin*, 798 F.3d 475, 480-86 (7th Cir. 2015). Here, Plaintiff merely responded "yeah" and walked away when Williams mentioned the first fight. Plaintiff has not produced any evidence that he informed either Defendant that he feared Hardin or informed them that Hardin continued to pose any ongoing threat of future harm to him.[1]

Plaintiff speculates that Williams and Fleming allowed Hardin to be in the hallway outside the commissary bullpen and were aware of a risk he posed to Plaintiff based on Williams' statement to the other officers that "I hope he knows how to fight." But the record is devoid of

---

1 To the contrary, Plaintiff testified that he had never said more than "hi" or "what's up" to either Defendant prior to July 12, 2021. Doc. 57-1 at 19.

evidence establishing how or why Hardin was outside the commissary bullpen or evidence that Defendants even knew Hardin was there. Plaintiff's speculation on this point is not enough to defeat summary judgment. *See generally Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) ("[I]nferences relying on mere speculation or conjecture will not suffice" to survive summary judgment); *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts creating a genuine issue for trial and may not rely on vague, conclusory allegations"); *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) ("speculation may not be used to manufacture a genuine issue of fact."). Moreover, it is not reasonable to conclude that either Defendant would have somehow foreseen that Plaintiff would ask to use the bathroom at the time Hardin was in the hallway leading to the bathroom.

While it is certainly unprofessional for a correctional supervisor to say that she hopes anyone can fight, the context and meaning of Williams' statement are unclear. Plaintiff concedes that he does not know what Williams meant or whether the officers were even talking to him. Doc. 57-1 at 20, 22. Plaintiff and Williams hardly knew each other; they had no negative history, and Plaintiff does not suggest that Williams harbored any animosity towards him. Even if the Court assumes that Willimas was speaking about Plaintiff, no evidence in the record demonstrates that Williams was doing anything more than speaking in jest given her earlier statement that she was aware Plaintiff had been in a fight. Without evidence that Williams or Fleming knew Hardin's whereabouts and had actual knowledge of a specific and imminent threat to Plaintiff posed by Hardin, a reasonable jury could not return a verdict in Plaintiff's favor. *See Zirko,* 2022 WL 16955470, at *1 (affirming summary judgment for correctional officer where plaintiff had told

him that cellmate had "threatened to beat him within an inch of his life" but did not provide context for that threat).

## IV. CONCLUSION

Because Plaintiff provides evidence only that Williams knew of past harm, and provides no evidence that Defendants had actual knowledge of a specific threat of impending harm, summary judgment is warranted in favor of Defendants. The Clerk of Court is directed to enter final judgment in favor of the Defendants. The Clerk is also directed to terminate Plaintiff's "opposing motion for summary judgment," Doc. 64, as a pending motion; the Court already clarified that this pleading was intended to be part of Plaintiff's response to Defendants' motion rather than a cross motion. Doc. 69. The Clerk shall also terminate and dismiss "John Doe" correctional officer. If Plaintiff wants to appeal, he must file a Notice of Appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If he appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998).

Date: August 11, 2025

*April M Perry*

**United States District Judge**